**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MR. ERIC JARECZEK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No.: 19 cv 812 |
| vs. | ) |
| | ) |
| MR. TERRY DONATI, MR. TRACY BURNIDGE, | ) |
| MRS. AMY DONATI, MRS. MARJORIE | ) |
| CAPONE, and A.B., a minor individual, | ) |
| | ) |
| Defendants. | ) |

**ANSWER AND AFFIRMATIVE DEFENSES**

NOW COME the Defendants, Terry Donati, Tracy Burnidge, Amy Donati, Marjorie

Capone and A.B., a minor individual, by and through their attorneys, Karnezis Law Group,

Ltd., and for their answer and affirmative defenses to plaintiff's complaint at law, state as

follows:

**ANSWER**

1.     Since 2012, Jareczek has been a judgment creditor of both Donati and Burnidge
resulting from an employment-related wage claim made by Jarecezk against them and a business
venture over which they had control, "Situs Commercial Realty, Inc."

**ANSWER:** Defendants aver that the 2012 judgment of which plaintiff references speaks for itself
and deny the mischaracterizations of said document in paragraph 1 of plaintiff's complaint at law.

2.     The case against Donati and Burnidge has resulted in a judgment that, with accrued
interest, is now more than $100,000,000 against Donati, Burnidge (and Situs Commercial Realty,
Inc.) jointly and severally.

**ANSWER:** Defendants deny the allegations of paragraph 2 of plaintiff's complaint at law.

3.     Since the entry of that Judgment, Donati and Burnidge have led Amy (Donati's wife),
Capone (Burnidge's wife), and A.B. (Burnidge's daughter), in a scheme ("Asset Protection
Scheme") to cause the proceeds of business ventures controlled by Donati and Burnidge to be
funneled into and between a complex web of domestic business entities and accounts held in the
name of others, including a custodial account for the ostensible benefit of A.B., so as to utilize
artifices, misrepresentations and concealment to place Donati's and Burnidge's assets beyond the
reach of their legitimate creditors in violation of federal and state law. To do so, all of the

Defendants have taken steps, among other things: (i) to shield and conceal Donati's and Burnidge's assets from judgment creditors; (ii) to transfer those assets out of the reach of their creditors; and (iii) to conceal from those creditors and the Courts transfers of those assets to and for the benefit of Donati and Burnidge ("Aims of the Asset Protection Scheme"). By its very nature and design, the Asset Protection
Scheme consisted and consists of a large number of complex holdings coupled with intentionally Byzantine transactions within and among them, all of which have created a highly complicated state of affairs.

**ANSWER:** Defendants deny the allegations of paragraph 3 of plaintiff's complaint at law.

4.          The conspiracy, racketeering activity and myriad fraudulent transfers alleged in this complaint were each and all designed to achieve the Aims of the Asset Protection Scheme.

**ANSWER:** Defendants deny the allegations of paragraph 4 of plaintiff's complaint at law.

5.          A core element of the Asset Protection Scheme is 311 Barrington Ave., LLC ("311") an Illinois limited liability company that all of the Defendants, except A.B., established in 2015 in order achieve the Aims of the Asset Protection Scheme. All of the acts of those Defendants in furtherance of the Asset Protection Scheme were undertaken with the intent and effect of harming Jareczek, and other creditors.

**ANSWER:** Defendants deny the allegations of paragraph 5 of plaintiff's complaint at law.

6.          This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Jareczek asserts claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962 & 1964.

**ANSWER:** Defendants admit that plaintiff has alleged claims as set forth in paragraph 6 of plaintiff's complaint at law and therefore admit to the jurisdiction of this Court but deny the validity of said claims.

7.          In addition, this Court has supplemental subject matter over Jareczek's state law claims pursuant to 28 U.S.C. § 1367. Supplemental subject matter jurisdiction is conferred over these causes of action pursuant to 28 U.S.C. § 1367 because: (i) this Court has original jurisdiction over this action; and (ii) Jareczek's state law claims are so related to the claims within this Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

**ANSWER:** Defendants admit that plaintiff has alleged claims as set forth in paragraph 7 of plaintiff's complaint at law and therefore admit to the jurisdiction of this Court but deny the validity of said claims.

8.          Donati and Burnidge have transacted business exclusively in Illinois, all of the Defendants reside in Illinois and all of the acts complained of herein occurred within the State of Illinois.

**ANSWER:** Defendants admit that jurisdiction rests in Illinois as alleged in paragraph 8 of plaintiff's complaint at law.

9.          Jareczek is an individual who currently resides in the County of Collin, State of Texas. However, Jareczek is a former resident of the County of Kane, State of Illinois, and was so at all relevant times.

**ANSWER:** Defendants have insufficient information to affirm or deny the allegations of paragraph 9 of plaintiff's complaint at law and therefore neither admit or deny said allegations and demand strict proof thereof.

10.          Defendants Donati and Amy are currently residents of West Dundee, IL. Defendants Burnidge, Capone and A.B. are currently residents of Elgin, IL. Defendant A.B. is (upon information and belief) a resident of St. Charles, IL.

**ANSWER:** Defendants admit the allegations of paragraph 10 of plaintiff's complaint at law.

11.          Beginning in or about 2012, Donati and Burnidge collectively began to plan, execute and conceal the Asset Protection Scheme by, among other acts, establishing and maintaining bank accounts in the names of defunct or shell entities over which they had control and utilizing them for personal and business purposes.

**ANSWER:** Defendants deny the allegations of paragraph 11 of plaintiff's complaint at law.

12.          In or about 2015, Donati and Burnidge retained Amy and Capone to work with them to plan, execute, conceal and further the Asset Protection Scheme.

**ANSWER:** Defendants deny the allegations of paragraph 12 of plaintiff's complaint at law.

13.          Amy and Capone, along with Donati and Burnidge, led and actively participated in the creation of various legal entities, including 311 and "Destination Dundee" to advance the Aims of the Asset Protection Scheme.

**ANSWER:** Defendants deny the allegations of paragraph 13 of plaintiff's complaint at law.

14.          Among other things, Amy served as the Managing Member of 311, a commercial real estate development, despite the fact that she had no prior experience in property development and contributed no capital to fund 311.

**ANSWER:** Defendants deny the allegations of paragraph 14 of plaintiff's complaint at law.

15.          Additionally, Capone served as an additional Member of 311.

**ANSWER:** Defendants admit the allegations of paragraph 15 of plaintiff's complaint at law.

16.          Beginning in or about late 2015 and continuing until the present day and beyond, Donati and Burnidge entered into a conspiracy, common enterprise, and common course of conduct, the purpose and effect of which was to achieve the Aims of the Asset Protection Scheme.

**ANSWER:** Defendants deny the allegations of paragraph 16 of plaintiff's complaint at law.

17.      Through the establishment and operation of 311, Amy and Capone were direct, necessary, and substantial participants in the conspiracy, common enterprise, and common course of conduct complained of herein, and acted as the agents for Donati and Burnidge in the course of the wrongdoing described herein.

**ANSWER:** Defendants deny the allegations of paragraph 17 of plaintiff's complaint at law.

18.      Through the establishment of the custodial account in the name of A.B. by Burnidge and its use as his own personal bank account, A.B. has acted as both an agent and shield for Burnidge in the course of wrongdoing described herein.

**ANSWER:** Defendants deny the allegations of paragraph 18 of plaintiff's complaint at law.

19.      Although Jareczek contends that all of the Defendants were full participants in the Asset Protection Scheme, in the alternative, Jareczek also alleges that Amy, Capone, and A.B. aided and abetted and rendered substantial assistance in the accomplishment of the scheme and artifice to defraud complained of herein. In taking the actions particularized here to aid, abet and substantially assist in the commission of the Asset Protection Scheme set forth here, the Defendants other than Donati and Burnidge acted recklessly, or with an awareness of the primary wrongdoing, realized that the conduct would substantially assist in the accomplishment of the fraud, and was aware of their overall contribution to and furtherance of the conspiracy, common enterprise, and common course of conduct.

**ANSWER:** Defendants deny the allegations of paragraph 19 of plaintiff's complaint at law.

20.      The Defendants' acts of aiding and abetting include, among other things, all of the acts that they are alleged to have committed in furtherance of the conspiracy, common enterprise, and common course of conduct complained of, except those relating solely to the reaching of agreements or understandings sufficient to categorize their conduct as conspiratorial.

**ANSWER:** Defendants deny the allegations of paragraph 20 of plaintiff's complaint at law.

21.      The Defendants participated in, aided and abetted, conspired to affect, and consciously pursued the unlawful conduct alleged herein to hinder, delay, and defraud Donati's and Burnidge's creditors and to enrich all of the Defendants at the expense of Jareczek and other creditors.

**ANSWER:** Defendants deny the allegations of paragraph 21 of plaintiff's complaint at law.

22.      The judgment against Donati, Burnidge and Situs Commercial Realty, Inc. arose from a claim by Jareczek stemming from his involvement in an entity organized and controlled by Donati and Burnidge known as "Situs Commercial Realty, Inc." which operated a commercial real estate brokerage with Burnidge as the President.

**ANSWER:** Defendants aver that the 2012 judgment of which plaintiff references speaks for itself and deny the mischaracterizations of said document in paragraph 22 of plaintiff's complaint at law.

23.      In addition to Situs Commercial Realty, Inc., Burnidge and Donati owned and operated "Situs Business Brokers", a currently inactive entity, which was never separately organized as a recognized entity and yet held itself out as a provider of business brokerage services.

**ANSWER:** Defendants deny the allegations of paragraph 23 of plaintiff's complaint at law.

24.     Jareczek was an independent contractor for Situs Business Brokers who procured sellers and purchasers of businesses from owners who were clients of Situs Business Brokers and Jareczek was entitled to earn a commission as a result of each successful transaction that he brokered.

**ANSWER:** Defendants deny the allegations of paragraph 24 of plaintiff's complaint at law.

25.     Jareczek was only paid for a portion of the transactions he participated in and thus, brought suit against Donati, Burnidge and Situs Business Brokers which led to a Settlement Agreement and Judgment Order based thereon whereby Donati, Burnidge and Situs agreed to pay Jareczek $66,224.66 in regular installments.

**ANSWER:** Defendants deny the allegations of paragraph 25 of plaintiff's complaint at law.

26.     Jareczek never received the agreed-upon payments on the Settlement Agreement or the Judgment Order.

**ANSWER:** Defendants deny the allegations of paragraph 26 of plaintiff's complaint at law.

27.     Donati and Burnidge also were the principal members of "US3, LLC" (hereafter "US3") which was an Illinois LLC which operated a pizza delivery and takeout business known as "Lee's Pizza Lodge" in Carpentersville, IL and which was involuntarily dissolved on February 14, 2014.

**ANSWER:** Defendants admit that defendants Donati and Burnidge were principal members of US3 LLC, which operated Lee's Pizza Lodge as alleged in paragraph 27 of plaintiff's complaint at law but deny the remaining allegations therein.

28.     Turnkey Business Brokers (hereafter "Turnkey") is an Illinois corporation incorporated on March 13, 2013 which is owned by Donati and Burnidge as equal shareholders and which principally operates out of an address in West Dundee, Illinois.

**ANSWER:** Defendants admit the allegations of paragraph 28 of plaintiff's complaint at law.

29.     The history of fraud schemes that Donati and Burnidge perpetrated in advance of this scheme are myriad and included, among other things, Fraud in Providing Business Broker Services, which resulted in the Illinois Secretary of State finding after an investigation into brokerage services offered by the two, that Donati and Burnidge fraudulently converted monies paid to them by prospective business buyers as earnest money into their own.

**ANSWER:** Defendants deny the allegations of paragraph 29 of plaintiff's complaint at law.

30.     The various schemes perpetrated by Donati and Burnidge led to many different injuries and the entry of various civil money judgments against Donati, Burnidge and their companies totaling millions of dollars which led to both men filing for bankruptcy protection.

**ANSWER:** Defendants deny the allegations of paragraph 30 of plaintiff's complaint at law.

31.     On June 15, 2015, Burnidge filed a Voluntary Petition for Bankruptcy claiming that he owed nearly $20M to both secured and unsecured creditors, among them Jareczek.

**ANSWER:** Defendants admit that defendant Burnidge filed a voluntary petition for bankruptcy on June 15, 2015 and further aver that said petition speaks for itself. Defendants deny the mischaracterizations of said document in paragraph 31 of plaintiff's complaint at law.

32.     However, Jareczek filed an Adversary Complaint against Burnidge on December 10, 2015 in the proceeding alleging, among other things, that Burnidge and Donati defrauded him by inducing Jareczek's entrance into a promissory note, settlement agreement and an agreed judgment order in Kane County Circuit Court promising payments to satisfy Jareczek's claims which were never intended to be paid.

**ANSWER:** Defendants admit that plaintiff filed an adversary complaint on December 10, 2015 and further aver that said complaint speaks for itself. Defendants deny the mischaracterizations of said document in paragraph 32 of plaintiff's complaint at law.

33.     Pursuant to the Adversary Complaint referenced herein, Burnidge and Jareczek entered into an Agreed Judgment of Non-Dischargeability on December 2, 2016 whereby Burnidge agreed to a Judgment Order as to three of four counts alleged in the Complaint, all of which alleged fraud by Burnidge.

**ANSWER:** Defendants admit that a judgment order was entered on December 2, 2016 and further aver that said order speaks for itself. Defendants deny the mischaracterizations of said document in paragraph 33 of plaintiff's complaint at law.

34.     Voluntarily agreeing to the aforementioned Agreed Judgment of Non- Dischargeability was a judicial admission by Burnidge that he committed fraud as alleged by Jareczek.

**ANSWER:** Defendants deny the allegations of paragraph 34 of plaintiff's complaint at law.

35.     On October 30, 2013, Donati filed a Voluntary Petition for Bankruptcy claiming that he owed $1,690,480.00 to both secured and unsecured creditors, among them Jareczek.

**ANSWER:** Defendants admit that defendant Donati filed a voluntary petition for bankruptcy on October 30, 2013 and further aver that said petition speaks for itself. Defendants deny the mischaracterizations of said document in paragraph 35 of plaintiff's complaint at law.

36.     However, Donati's Petition for Voluntary Discharge was dismissed by the Bankruptcy Court for the Northern District of Illinois on September 23, 2014, with the Honorable Donald Cassling finding that Donati testified falsely and committed a fraud upon the court by concealing at least $90,000.00 from Trustee Joe Voiland in connection with the filing.

**ANSWER:** Defendants deny the allegations of paragraph 36 of plaintiff's complaint at law.

37.     These fraud schemes directly and indirectly generated proceeds that Donati and Burnidge sought to shield from legitimate creditors much as they did in the instant case with the Plaintiff via the Asset Protection Scheme.

**ANSWER:** Defendants deny the allegations of paragraph 37 of plaintiff's complaint at law.

38.     The fraud scheme involving the business brokerages of Donati and Burnidge consisted of the continuous operation of a d/b/a business brokerage known as "Situs" which continuously held itself out as a provider of business brokerage services as while never having been registered as an LLC or incorporated in the State of Illinois, and has a last known business address of Shepard Drive, Suite I , Elgin, IL, 60123.

**ANSWER:** Defendants deny the allegations of paragraph 38 of plaintiff's complaint at law.

39.     While Situs Business Brokers is not and never was a legal entity, Situs Commercial Realty, Inc. (a now-dissolved corporation) is a judgment debtor of Jareczek along with Donati and Burnidge stemming from the dispute over wages raised above.

**ANSWER:** Defendants deny the allegations of paragraph 39 of plaintiff's complaint at law.

40.     After the judgment against Donati, Burnidge, Situs Commercial Realty, Inc., all three continued to conduct business and Donati and Burnidge later established Turnkey Business Brokers, Inc. as a separate entity in order to shield them from creditors, including Jareczek.

**ANSWER:** Defendants deny the allegations of paragraph 40 of plaintiff's complaint at law.

41.     Though Turnkey was, upon information and belief, formed in 2013, it was not until Burnidge's debt to Jareczek was declared non-dischargeable in 2015 that Donati and Burnidge began to transfer Situs Business Brokers business to Turnkey such that Situs and Turnkey were actually one in the same operation.

**ANSWER:** Defendants deny the allegations of paragraph 41 of plaintiff's complaint at law.

42.     Turnkey became a mere alter ego of Situs Business Brokers and as of 2015, its sole purpose was to escape the creditors of Donati, Burnidge and Situs, including Jareczek.

**ANSWER:** Defendants deny the allegations of paragraph 42 of plaintiff's complaint at law.

43.     Realistically, there is no difference between the two entities and that is evidenced by that fact that Burnidge's official email address at Turnkey is actually tracy@situscorp.com and the fact that Turnkey temporarily assumed the address of Situs and Situs' phone number, still using it to this day.

**ANSWER:** Defendants deny the allegations of paragraph 43 of plaintiff's complaint at law.

44.     To further frustrate creditors and enhance the Asset Protection Scheme, Donati and Burnidge involved the defunct "US3, LLC" in its shell game by establishing a bank account in the name of US3, LLC at Parkway Bank & Trust and using it as the sole operating account of Turnkey, despite the fact that US3, LLC was involuntarily dissolved on February 14, 2014.

**ANSWER:** Defendants deny the allegations of paragraph 44 of plaintiff's complaint at law.

45.     To induce clients and purchasers of Turnkey businesses into acquiescence in this arrangement, the listing agreements prepared at Donati's and Burnidge's direction and control read: "US3 LLC DBA (an Illinois Corporation): Turnkey Business Brokers" which insures that earnest money checks and the like are written to a non- existent entity whose bank account is wholly controlled by Donati. That arrangement keeps the money deposited into that account outside the reach of the creditors of Donati, Burnidge, Situs and Turnkey.

**ANSWER:** Defendants deny the allegations of paragraph 45 of plaintiff's complaint at law.

46.     311 Barrington Ave., LLC is an Illinois LLC whose members are Amy, Capone and Ian Lamp which was formed for the ostensible purpose of purchasing the real property and development of a mixed-use building situated at 311 Barrington Avenue, East Dundee, IL.

**ANSWER:** Defendants admit that defendants Amy Donati and Capone and Ian Lamp are members of 311 Barrington Ave., LLC as alleged in paragraph 46 of plaintiff's complaint at law. Defendants deny the remaining allegations of paragraph 46 of plaintiff's complaint at law.

47.     In 2015, while in the midst of Burnidge's pending bankruptcy and after Donati's was dismissed based on fraud by the court, 311 Barrington Ave., LLC was formed with the original membership of Amy and Capone, each as equal members.

**ANSWER:** Defendants admit that 311 Barrington Ave., LLC was formed in 2015 with defendants Amy Donati and Capone as members, but deny the remaining allegations of paragraph 47 of plaintiff's complaint at law.

48.     Prior to and after its formation, however, Donati and Burnidge represented to numerous people, including officials from the Village of East Dundee that they were the real principals behind the LLC. The belief was shared by among others, Mayor Lael Miller, Village Administrator Robert Skurla, and others.

**ANSWER:** Defendants deny the allegations of paragraph 48 of plaintiff's complaint at law.

49.     In fact, prior to the formation of the LLC in December 2015, Burnidge and Donati were parties to a Redevelopment Agreement with Village officials for the 311 Barrington Avenue property.

**ANSWER:** Defendants deny the allegations of paragraph 49 of plaintiff's complaint at law.

50.     In point of fact, not one item of correspondence or documentation was ever directed to Amy by Village officials either before or after the formation of the LLC, despite the fact that she has held herself out as the Managing Member of the LLC.

**ANSWER:** Defendants deny the allegations of paragraph 51 of plaintiff's complaint at law.

51.     To this day, it is unclear who are the "official" members of 311.

      a.  When originally formed in December 2015, Amy and Capone were ostensibly the members.

b.   While Capone claimed that she was removed from her position as a Member shortly after formation, she executed as "Manager", and filed an Article of Amendment with the Illinois Secretary of State on October 11, 2016 removing not herself but rather Amy Donati as a Member. That form, incidentally, contained the initials of Donati on its face indicating his hand in its preparation despite his supposed non-interest in the LLC.

c.   On January 14, 2016, Amy and Ian Lamp (either individually or on behalf of an LLC under his control, M&L 311, LLC) entered into an Operating Agreement purportedly as the members of 311.

d.   Capone, as the "sole member" of 311, signed the commercial mortgage of the real property in favor of Otto Engineering, Inc. on October 14, 2016.

e.   Despite the fact that the obligations to pay the property taxes rested with 311 after the closing date on the sale of the property, the future property tax bills were thereafter directed to Tracy Burnidge.

f.   When the construction loan checks were distributed by Otto Engineering they were not given to Lamp, Amy or Capone but rather to Donati at his direction and several of the checks were not even written to 311 but rather to the long-defunct US3, LLC, which still had an account in its name at Parkway Bank & Trust over which Donati had complete control.

**ANSWER:** Defendants deny the allegations of paragraph 51 of plaintiff's complaint at law, including subparagraphs (a) through (f) therein.

52.        Regardless of the membership however, it is common knowledge among the Village of East Dundee officials, Tom Roeser, Ian Lamp and others that Donati and Burnidge are among the real owners of the interest in 311 Barrington Ave., LLC and they commonly represent same to all of the above and more.

**ANSWER:** Defendants deny the allegations of paragraph 52 of plaintiff's complaint at law.

53.        On or about February 8, 2016, Frank Tomasello formed ED River Street, Inc. with the Illinois Secretary of State.

**ANSWER:** Upon information and belief, defendants admit the allegations of paragraph 53 of plaintiff's complaint at law.

54.        The corporation was formed as a business venture between Tomasello and Donati for the ostensible purpose of buying a vacant lot in East Dundee, 306-308 N. River Street to develop it into a two-story building with first floor retail two units and two second floor apartments with an estimated investment of $800,000.

**ANSWER:** Defendants deny the allegations of paragraph 54 of plaintiff's complaint at law.

55.        Pursuant to the Asset Protection Scheme, and because of the vast number of creditors pursuing him, Donati conspired with Amy to make the nominal shareholders of the corporation, Amy and Tomasello.

**ANSWER:** Defendants deny the allegations of paragraph 55 of plaintiff's complaint at law.

56.        Despite the fact that it has been represented to Village officials that Amy is the shareholder in ED River Street, Inc., the reality is that it is a venture between Donati and Tomasello and is intended to benefit each of them, not Amy.

**ANSWER:** Defendants deny the allegations of paragraph 56 of plaintiff's complaint at law.

57.        Through the present day, Donati and Burnidge, with the assistance of Amy, Capone, and others, have used the different companies listed above that they have controlled, to perpetrate and facilitate their Asset Protection Scheme for the purpose of evading their creditors.

**ANSWER:** Defendants deny the allegations of paragraph 57 of plaintiff's complaint at law.

58.        As part of the Asset Protection Scheme, Burnidge has established a "Custodial" bank account for the ostensible benefit of his minor daughter, AB.

**ANSWER:** Defendants deny the allegations of paragraph 58 of plaintiff's complaint at law.

59.        That account, established at First State Bank, has always been used by Burnidge as his own personal account through which to funnel money for the sole purpose of protecting it from creditors.

**ANSWER:** Defendants deny the allegations of paragraph 59 of plaintiff's complaint at law.

60.        That account, over which Burnidge had authority for the benefit of AB, was regularly used by Burnidge to transfer monies to and from his own personal checking account which was housed at the same institution, as a method to keep the checking account artificially low of funds.

**ANSWER:** Defendants deny the allegations of paragraph 60 of plaintiff's complaint at law.

61.        The use of a custodial account in this fashion, in and of itself, is evidence of his intent to conceal assets that would otherwise be within the reach of his creditors.

**ANSWER:** Defendants deny the allegations of paragraph 61 of plaintiff's complaint at law.

62.        The judgement debt of Jareczek against Donati and Burnidge and his aggressive pursuit thereof, led them in 2015 to embark on the current Asset Protection Scheme with the other Defendants acting to protect the money of Donati and Burnidge from Jareczek and other creditors.

**ANSWER:** Defendants deny the allegations of paragraph 62 of plaintiff's complaint at law.

63.        Various tribunals and courts have already ruled that Donati was engaged in myriad

substantial long-term fraudulent activities that occurred prior to this scheme
including, as raised above, the Illinois Secretary of State's office and the United States Bankruptcy
Court for the Northern District of Illinois.

**ANSWER:** Defendants deny the allegations of paragraph 63 of plaintiff's complaint at law.

64.         The sheer length of the activities reveals that at the time Donati and Burnidge started
the Asset Protection Scheme, including the creation and continued use of dissolved (US3, LLC) or
non-existent (Situs Business Brokers) entities to conduct business which continued through and
into 2018, neither of them had any intention of ceasing their course of pervasive fraud.

**ANSWER:** Defendants deny the allegations of paragraph 64 of plaintiff's complaint at law.

65.         The remaining Defendants, all friends and family members of Donati or Burnidge
knew and had reason to know that the monies Donati and Burnidge had made on their continued
business ventures and that they stood to make in the future could be imperiled by civil suits and
civil judgments against each man.

**ANSWER:** Defendants deny the allegations of paragraph 65 of plaintiff's complaint at law.

66.         It was therefore foreseeable that private creditors would pursue the assets of Donati
and Burnidge and it was necessary to secret them in the way they did beginning in 2015.

**ANSWER:** Defendants deny the allegations of paragraph 66 of plaintiff's complaint at law.

67.         As part of their Asset Protection Scheme, Donati and Burnidge operated Turnkey
Business Brokers as that company's sole owners and principals and declared no business income to
that entity until at least 2017, despite the fact that Turnkey remained active and an ongoing concern
and does so to this day.

**ANSWER:** Defendants deny the allegations of paragraph 67 of plaintiff's complaint at law.

68.         In addition, Donati and Burnidge created 311 Barrington Avenue, LLC to construct a
building with a value of at least $2.1 million which they controlled but which were ostensibly owned
by their wives, Amy and Capone.

**ANSWER:** Defendants deny the allegations of paragraph 68 of plaintiff's complaint at law.

69.         In addition, Donati and Frank Tomasello created the joint venture of ED River Street
to develop a parcel of property in East Dundee, IL but Donati made the ostensible owner thereof
his wife Amy, in an effort to avoid the reach of his creditors, including the Plaintiff.

**ANSWER:** Defendants deny the allegations of paragraph 69 of plaintiff's complaint at law.

70.         Burnidge created a custodial account in the name of his minor daughter, A.B. for the
sole purpose of segregating and hiding those funds from the reach of his creditors despite the fact
that he regularly invaded such account for his own personal usage and that of his wife, Capone.

**ANSWER:** Defendants deny the allegations of paragraph 70 of plaintiff's complaint at law.

71.     The key objective of the above-described schemes was to shield Donati's and Burnidge's assets from their creditors.

**ANSWER:** Defendants deny the allegations of paragraph 71 of plaintiff's complaint at law.

## COUNT I

72.     Jareczek realleges and incorporates by reference the allegations made in each of the proceeding paragraphs.

**ANSWER:** Defendants repeat and restate their answers to paragraphs 1-71 as their answer to paragraph 72 of plaintiff's complaint at law.

73.     Donati, Burnidge, Capone and Amy each was a "person" as that term is defined in 18 U.S.C. §1961(3), engaged in, and the activities of which affected, interstate commerce.

**ANSWER:** Defendants state that the allegations of paragraph 73 of plaintiff's complaint at law are a legal conclusion to which no response is required.

74.     Those Defendants were associated in fact, and constituted an "enterprise" as that term is defined in 18 U.S.C. § 1961(4), which enterprise was engaged in, and the activities of which affected, interstate commerce. This enterprise is referred to for purposes of this Complaint as the "Asset Protection Enterprise." The Asset Protection Enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

**ANSWER:** Defendants deny the allegations of paragraph 74 of plaintiff's complaint at law.

75.     Beginning in or about 2015 Donati and Burnidge each being a "person" as that term is defined in 18 U.S.C. § 1961(3), did knowingly maintain, directly or indirectly, control of, and conducted and participated in, directly or indirectly, the Asset Protection Enterprise, which was engaged in, and the activities of which affected, interstate commerce, through a pattern of racketeering activity, as that term is defined in 18 U.S.C. §§ 1961(1) and (5).

**ANSWER:** Defendants deny the allegations of paragraph 75 of plaintiff's complaint at law.

76.     The Defendants, and others, misrepresented, concealed, and hid, and caused to be misrepresented, concealed, and hidden, the purposes of and the acts done in furtherance of the Asset Protection Enterprise.

**ANSWER:** Defendants deny the allegations of paragraph 76 of plaintiff's complaint at law.

77.     The racketeering activity in which the Defendants engaged in violation of 18 U.S.C. 1962(b) and (c) consisted, *inter alia*, of numerous predicate offenses as set out below.

**ANSWER:** Defendants deny the allegations of paragraph 77 of plaintiff's complaint at law.

78.     Beginning in 2015, Donati and Burnidge committed wire fraud in violation of 18

U.S.C. §1343 including the deposit into and withdrawal of monies (and use of same as a front) an account in the name of a defunct entity-US3, LLC by both Donati and Burnidge to avoid creditors of each and Turnkey Business Brokers.

      a.   Examples of such transfers to and from that account, ending in 0459 at Parkway Bank & Trust, in the name of a defunct LLC, are as follows: 1/3/17 (Withdrawal of $850.00), 1/10/17 (sit of $1,500.00), 1/10/17 (Withdrawal of $2,500.00), 1/11/17 (Withdrawal of $1,500.00), 1/17/17 (Deposit of $2,500.00), 1/17/17 (Withdrawal of $400.00), 1/17/17 (Withdrawal of $2,000.00).

      b.   These transactions continued unabated and were discovered by Plaintiff only in October of 2017 pursuant to post-judgment discovery served upon Donati and Burnidge and by the time the account in the name of US3, LLC was discovered, it was drained of any funds which could have satisfied the Plaintiff's judgment.

      c.   In actual fact, the US3, LLC account was the only business account utilized by Donati, Burnidge and Turnkey in furtherance of their business and it was established solely to evade the creditors of each.

**ANSWER:** Defendants deny the allegations of paragraph 78 of plaintiff's complaint at law, including subparagraphs (a) through (c) therein.

79.    Beginning in September 2016 and continuing at least through 2017, Burnidge committed both financial institution and wire fraud by the establishment and use of a custodial account in the name of his minor daughter for activities not in furtherance of the custodial account purposes including for his own benefit and that of Capone.

      a.   During that time, in an account established with First State Bank, a federally insured deposit institution, Burnidge made regular electronic transfers from said custodial account to his own personal checking account for uses not related to the benefit of his minor daughter but to sustain the lifestyle of Capone and himself.

      b.   Examples of such transfers from that account, ending in 1130, to his own checking account are as follows: 9/16/16 ($50.00), 10/14/16 ($100.00), 10/20/16 ($100.00), 10/24/16 ($100.00), 10/28/16 ($100.00), 11/14/16 ($75.00), 12/19/16 ($100.00), 12/21/16 ($100.00), 12/22/16 ($200.00), 12/23/16 ($150.00), 12/27/16 ($100.00).

      c.   These transfers continued unabated at least through the time the Plaintiff learned of them on September 21, 2017 pursuant to a subpoena served on First State Bank.

**ANSWER:** Defendants deny the allegations of paragraph 79 of plaintiff's complaint at law, including subparagraphs (a) through (c) therein.

80.    Donati engaged in mail and wire fraud on February 5, 2016, by engaging with city officials in East Dundee, IL advising via email that his wife was the developer and owner of 306 and 308 River Street along with Frank Tomasello when, in fact, he was the owner of that property.

a. In fact, on February 4, 2016, Robert Skurla of the Village of East Dundee sent an email to other village officials advising that it was Tomasello and Donati who were purchasing the subject property only to be told by Donati that it was his wife, Amy, who was the purchaser with Tomasello.

**ANSWER:** Defendants deny the allegations of paragraph 80 of plaintiff's complaint at law, including subparagraph (a) therein.

81.    On or about the dates set forth above in the manners therein described, Defendants Donati and Burnidge, in violation of 18 U.S.C.§ 1343, for the purpose of executing and attempting to execute the aforementioned Asset Protection Scheme, did knowingly transmit and cause to be transmitted, in a matter effecting interestate commerce, by means of wire communication, the writings, signs, and signals set forth above, proof of any one of which is sufficient to establish necessary Predicate Acts.

**ANSWER:** Defendants deny the allegations of paragraph 81 of plaintiff's complaint at law.

82.    The aforementioned acts were committed with the intent to promote the carrying on of specified unlawful activity, to wit, wire fraud and bankruptcy-related fraud in furtherance of the Asset Protection Scheme in this case; and knowing and having reason to know that the transaction was designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity, as detailed above.

**ANSWER:** Defendants deny the allegations of paragraph 82 of plaintiff's complaint at law.

83.    As a direct and proximate result and by reason of the foregoing violations of 18 U.S.C. § 1962(b) and (c), Jareczek has been injured in its business or property because he has been unable to collect his judgment against Donati and Burnidge and their alter-ego companies and has been forced to expend considerable time and resources investigating and exposing the Asset Protection Scheme.

**ANSWER:** Defendants deny the allegations of paragraph 83 of plaintiff's complaint at law.

84.    As a consequence of this injury to Jareczek's business or property, Jareczek is entitled to recover herein treble damages, the costs of bringing this suit, and his attorneys' fees.

**ANSWER:** Defendants deny the allegations of paragraph 84 of plaintiff's complaint at law.

WHEREFORE, the Defendants, TERRY DONATI, TRACY BURNIDGE, AMY DONATI, MARJORIE CAPONE and A.B., a minor individual, deny that plaintiff is entitled to judgment against them in any amount whatsoever, and asks that the complaint at law against them be dismissed and that judgment be entered in their favor and against the plaintiff on the remaining pleadings.

## COUNT II

85.        Jareczek realleges and incorporates by reference the allegations made in each of the proceeding paragraphs.

**ANSWER:** Defendants repeat and restate their answers to paragraphs 1-84 as their answer to paragraph 85 of plaintiff's complaint at law.

86.        Beginning in or about 2015 and continuing at least until the filing of this Complaint, Donati, Burnidge, Capone and Amy, being persons associated in fact, which association in fact engaged in, and the activities of which affected, interstate commerce, did knowingly conspire and agree, with each other and others known and unknown, to conduct and participate, directly and indirectly, in the Asset Protection Scheme, which is described in detail above, through a pattern of racketeering activity, as that term is defined in 18 U.S.C. §§ 1961(1) and (5), in violation of 18 U.S.C. § 1962(b) and (c).

**ANSWER:** Defendants deny the allegations of paragraph 86 of plaintiff's complaint at law.

87.        All of the Defendants named herein did knowingly conspire and agree with each other and with others, known and unknown, to conceal the assets of Donati and Burnidge as well as the transfers to and ownership and control of various business interests of Donati and Burnidge in income derived, directly and indirectly, from a pattern of racketeering activity, as that term is defined in 18 U.S.C. §§ 1961(1) and (5), and to use, directly and indirectly, some or all of that income and the proceeds of that income in the operation of the Asset Protection Enterprise, that engaged in and whose activities affected interstate and foreign commerce violation of 18 U.S.C. § 1962(a).

**ANSWER:** Defendants deny the allegations of paragraph 87 of plaintiff's complaint at law.

88.        The foregoing pattern of racketeering activity consisted, *inter alia*, of the various racketeering acts set forth in Count I of this Complaint, which acts are realleged herein.

**ANSWER:** Defendants deny the allegations of paragraph 88 of plaintiff's complaint at law.

89.        As a direct and proximate result and by reason of the foregoing violations of 18 U.S.C. § 1962(d), Jareczek has been injured in his business or property because he has been unable to collect his judgment against Donati and Burnidge and their alter- ego companies and has been forced to expend considerable time and resources investigating and exposing the Asset Protection Scheme.

**ANSWER:** Defendants deny the allegations of paragraph 89 of plaintiff's complaint at law.

90.        As a consequence of this injury to Jareczek's business or property, he is entitled to recover herein treble damages, the costs of bringing this suit, and his attorneys' fees.

**ANSWER:** Defendants deny the allegations of paragraph 90 of plaintiff's complaint at law.

    WHEREFORE, the Defendants,  TERRY DONATI, TRACY BURNIDGE, AMY DONATI,

MARJORIE CAPONE and A.B., a minor individual, deny that plaintiff is entitled to judgment against them in any amount whatsoever, and asks that the complaint at law against them be dismissed and that judgment be entered in their favor and against the plaintiff on the remaining pleadings.

## COUNT III

91.     Jareczek realleges and incorporates by reference the allegations made in each of the proceeding paragraphs.

**ANSWER:** Defendants repeat and restate their answers to paragraphs 1-90 as their answer to paragraph 91 of plaintiff's complaint at law.

92.     Donati and Burnidge made the numerous transfers of funds enumerated above with actual intent to hinder, delay, or defraud his creditors, including Jareczek.

**ANSWER:** Defendants deny the allegations of paragraph 92 of plaintiff's complaint at law.

93.     Capone and Amy conspired and participated with and aided and abetted Donati and Burnidge in the Asset Protection Scheme and in making the aforementioned transfers.

**ANSWER:** Defendants deny the allegations of paragraph 93 of plaintiff's complaint at law.

94.     The numerous transfers of funds enumerated above were made with actual intent to hinder, delay, or defraud because, *inter alia* the transfers were to insiders – *e.g.*, from the Burnidge to his minor daughter, A.B. and from Donati to his wife, Amy.

**ANSWER:** Defendants deny the allegations of paragraph 94 of plaintiff's complaint at law.

95.     In addition, Donati and Burnidge retained possession or control of the funds and property so transferred as described herein.

**ANSWER:** Defendants deny the allegations of paragraph 95 of plaintiff's complaint at law.

96.     The transfers were undisclosed and concealed. Donati and Burnidge repeatedly have made false statements or material misrepresentations or material omissions to Jareczek and his counsel with regard to their control over assets held in the names of others.

**ANSWER:** Defendants deny the allegations of paragraph 96 of plaintiff's complaint at law.

97.     Furthermore, Donati and Burnidge, with the extensive assistance of Amy and Capone, concealed numerous transfers with regard to the assets referenced in this pleading, *e.g.*, by causing funds to be transferred through multiple accounts not in the name of either Donati or Burnidge.

**ANSWER:** Defendants deny the allegations of paragraph 97 of plaintiff's complaint at law.

98.       Moreover, throughout the collection efforts of Jareczek and continuing to date, Donati and Burnidge have made every effort to conceal their ability to control any of their assets.

**ANSWER:** Defendants deny the allegations of paragraph 98 of plaintiff's complaint at law.

99.       And in depositions, Capone and Amy have testified falsely and evasively about their roles in their husbands' creditor evasion scheme.

**ANSWER:** Defendants deny the allegations of paragraph 99 of plaintiff's complaint at law.

100.      Finally, thanks to the production of documents including myriad email correspondences to, from, and relating to the Defendants, from third parties, including the Village of East Dundee in 2018, Jareczek learned of the extent of the Asset Protection Scheme perpetrated by the Defendants.

**ANSWER:** Defendants deny the allegations of paragraph 100 of plaintiff's complaint at law.

WHEREFORE, the Defendants,  TERRY DONATI, TRACY BURNIDGE, AMY

DONATI, MARJORIE CAPONE and A.B., a minor individual, deny that plaintiff is entitled to

judgment against them in any amount whatsoever, and asks that the complaint at law against them

be dismissed and that judgment be entered in their favor and against the plaintiff on the remaining

pleadings.

## COUNT IV

101.      Jareczek realleges and incorporates by reference the allegations made in each of the proceeding paragraphs.

**ANSWER:** Defendants repeat and restate their answers to paragraphs 1-100 as their answer to paragraph 101 of plaintiff's complaint at law.

102.      Defendants Donati, Burnidge, Amy, and Capone conspired to commit the Asset Protection Scheme.

**ANSWER:** Defendants deny the allegations of paragraph 102 of plaintiff's complaint at law.

103.      Donati, Burnidge, Amy, and Capone, as Managers and/or Members of several entities including 311 Barrington Ave., LLC, collectively agreed to participate in the Asset Protection Scheme by virtue of agreeing to be part of the LLC.

**ANSWER:** Defendants deny the allegations of paragraph 103 of plaintiff's complaint at law.

104.      The purpose of the Asset Protection Scheme is to ensure that the assets of Defendants Donati and Burnidge do not become known to Jareczek, their judgment creditor.

**ANSWER:** Defendants deny the allegations of paragraph 104 of plaintiff's complaint at law.

105.      In agreeing to partake in the Asset Protection Scheme, the Defendants (not including A.B.) performed the "overt act" of operating a complex web of entities, some defunct or dissolved, in order to conceal the true and accurate assets of Donati and Burnidge.

**ANSWER:** Defendants deny the allegations of paragraph 105 of plaintiff's complaint at law.

106.      These acts of concealment by Donati, Burnidge, Amy, and Capone furthered the agreement or conspiracy to prevent Jareczek or the courts from being able to properly identify the specific assets of Donati and Burnidge.

**ANSWER:** Defendants deny the allegations of paragraph 106 of plaintiff's complaint at law.

107.      The conspiracy surrounding Defendants is one created to accomplish the unlawful purpose of concealing assets from a judgment creditor.

**ANSWER:** Defendants deny the allegations of paragraph 107 of plaintiff's complaint at law.

108.      This conspiracy caused injury to the Plaintiff, Jareczek, that compounded the financial injury done to him by Donati and Burnidge.

**ANSWER:** Defendants deny the allegations of paragraph 108 of plaintiff's complaint at law.

109.      Without knowing or being able to accurately evaluate the assets of Defendants Donati and Burnidge, Jareczek is unable to obtain the funds he is owed as a judgment creditor.

**ANSWER:** Defendants deny the allegations of paragraph 109 of plaintiff's complaint at law.

WHEREFORE, the Defendants, TERRY DONATI, TRACY BURNIDGE, AMY

DONATI, MARJORIE CAPONE and A.B., a minor individual, deny that plaintiff is entitled to

judgment against them in any amount whatsoever, and asks that the complaint at law against them

be dismissed and that judgment be entered in their favor and against the plaintiff on the remaining

pleadings.

### COUNT V

110.      Jareczek realleges and incorporates by reference the allegations made in each of the proceeding paragraphs.

**ANSWER:** Defendants repeat and restate their answers to paragraphs 1-109 as their answer to paragraph 110 of plaintiff's complaint at law.

111.      Defendants Donati and Burnidge violated Section 5 of the Uniform Fraudulent

Transfer Act in that they with intended to hinder, delay, and defraud Jareczek who was owed a liquidated debt.

**ANSWER:** Defendants deny the allegations of paragraph 111 of plaintiff's complaint at law.

112.        In or about 2015, Donati and Burnidge began fraudulently transferring funds after the Judgment Order were entered against them in favor of Jareczek and he continued to pursue them beyond their attempted discharge of his debt by bankruptcy filings.

**ANSWER:** Defendants deny the allegations of paragraph 112 of plaintiff's complaint at law.

113.        Donati and Burnidge clearly made the monetary transfers described herein with actual intent to hinder, delay, or defraud their judgment creditor, Jareczek, since they created the Asset Protection Scheme and failed to pay what was agreed upon in the Settlement Agreement.

**ANSWER:** Defendants deny the allegations of paragraph 113 of plaintiff's complaint at law.

WHEREFORE, the Defendants,  TERRY DONATI, TRACY BURNIDGE, AMY DONATI, MARJORIE CAPONE and A.B., a minor individual, deny that plaintiff is entitled to judgment against them in any amount whatsoever, and asks that the complaint at law against them be dismissed and that judgment be entered in their favor and against the plaintiff on the remaining pleadings.

## AFFIRMATIVE DEFENSES

NOW COME the Defendants, TERRY DONATI, TRACY BURNIDGE, AMY DONATI, MARJORIE CAPONE and A.B., a minor individual, by and through their attorneys, KARNEZIS LAW GROUP, and for their affirmative defenses to plaintiffs' complaint at law state as follows:

### First Affirmative Defense

That plaintiff has failed to allege a *prima facie* claim and allege a proper cause of action for count I of plaintiff's complaint at law, "substantive racketeering", as 18 U.S.C. §1961 does not provide a private right of action for the alleged conduct.

### Second Affirmative Defense

That plaintiff has failed to allege a *prima facie* claim and allege a proper cause of action for

count II of plaintiff's complaint at law, "racketeering conspiracy", as 18 U.S.C. §1961 does not provide a private right of action for the alleged conduct.

### Third Affirmative Defense

That plaintiff has failed to allege a *prima facie* claim and allege a proper cause of action for count III of plaintiff's complaint at law, "aiding and abetting, conspiring to commit and participating in fraudulent transfers."

### Fourth Affirmative Defense

That plaintiff has failed to allege a *prima facie* claim and allege a proper cause of action for count IV of plaintiff's complaint at law, "civil conspiracy."

### Fifth Affirmative Defense

That plaintiff has failed to allege a *prima facie* claim and allege a proper cause of action for count V of plaintiff's complaint at law, "violation of the fraudulent transfer act."

### Sixth Affirmative Defense

That plaintiff lacks standing to allege a cause of action under count I or count II of plaintiff's complaint at law as there is no direct relationship between the injury asserted and the injurious conduct alleged.

### Seventh Affirmative Defense

That plaintiff lacks standing to alleged a cause of action under count I or count II of plaintiff's complaint at law as there is no evidence that the wrongful conduct was a substantial and foreseeable cause of the injury alleged and that the connection to this injury was logical and not speculative.

### Eighth Affirmative Defense

That plaintiff has not incurred any actionable damages in order to sustain a cause of action under counts I-V of plaintiff's complaint at law.

Respectfully submitted,

KARNEZIS LAW GROUP LLC

BY:    /s/ Lou Karnezis
             Attorney for Defendants

Lou Karnezis
KARNEZIS LAW GROUP, LLC.
350 South Northwest Highway
Suite 300
Park Ridge, Illinois 60668
Tel: (847) 656-5278
Email: karnezislaw@gmail.com
ARDC #6226862